# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PATRICK WILSON**                                    **CIVIL ACTION**

**VERSUS**                                            **CASE NO. 10-3338**

**STATE OF LOUISIANA,** *ex rel*, **LOUISIANA TAX**   **SECTION: "G"(3)**
**COMMISSION; WHITNEY JOSEPH, JR.,**
**ASSESSOR FOR PARISH OF ST. JOHN THE**
**BAPTIST; AND ESPARROS PROPERTIES**
**AIRLINE, L.L.C.**

## <u>ORDER</u>

Currently before the Court is a Motion for Summary Judgment[1] filed by Defendant, Whitney

Joseph, Jr., Assessor for the Parish of St. John the Baptist, wherein he argues that he is entitled to

judgment as a matter of law for the claims asserted against him on the basis of qualified immunity,

arguing that Plaintiff, Patrick Wilson, was not deprived of a property right and that Assessor

Whitney Joseph, Jr. acted reasonably. The Assessor's motion was joined and supported by

Defendant, Esparros Properties Airline, LLC.[2] Also before the Court is a Motion for Summary

Judgment filed by Patrick Wilson, wherein Patrick Wilson argues that he is entitled to judgment as

a matter of law against all defendants on the basis that all defendants violated his procedural due

process rights by their actions concerning the cancellation of a tax assessment on improvements that

he claims to have purchased at a tax sale, which Wilson argues led to the cancellation of the tax sale

itself. Wilson further argues that these actions prevented him from possession of and from quieting

---

[1] Rec. Doc. 48.

[2] Rec. Doc. 54 at p. 2. Defendants Louisiana Tax Commissioners did not join in the Assessor's Motion for Summary Judgment.

title to the improvements and therefore he was deprived of property rights.[3]  After considering the motions, oppositions, Patrick Wilson's reply, the record, and the applicable law, the Court will grant Defendant Assessor Whitney Joseph, Jr.'s Motion for Summary Judgment and will deny Patrick Wilson's Motion for Summary Judgment.

## I. Background

On June 28, 2007, Plaintiff Patrick Wilson ("Wilson") purchased improvements on real property located in St. John the Baptist Parish, Louisiana, for nonpayment of 2006 *ad valorem* real estate taxes.[4]  The purchased improvement is a metal structure (a dance floor), which is attached to another building owned by Defendant Esparros Properties Airline, LLC ("Esparros").[5]  The structure was erected by a former tenant of Esparros, RJ's Lounge, Inc. ("RJ's Lounge"), during a time when RJ's Lounge leased the main property from Esparros.[6]

There is no evidence that Esparros ever purchased the improvements or demanded that RJ's Lounge remove the improvements after RJ's Lounge's lease expired and RJ's Lounge vacated the premises.  RJ's Lounge subsequently sold the improvements to another entity, Country Club Restaurant & Lounge, Inc.[7]  Wilson alleges that this is the same entity that leased the premises from Esparros after RJ's Lounge's lease expired; however, that lease lists "Country Club Restaurant and

---

[3] Rec. Doc. 50.

[4] Rec. Doc. 50-5 at p. 12.

[5] *Id*.

[6] Rec. Doc. 50-6 at p. 5.

[7] *Id*. at pp. 6-8.

*Club*, Inc." as the tenant of Esparros's premises. At all relevant times, the improvements were assessed separately from the remainder of the property.[8] In 2006, Country Club Restaurant & Lounge, Inc. (or *Club*, as stated in the lease) vacated the premises and thereafter did not pay the *ad valorem* taxes on the improvements.[9]

The following year, in 2007, Wilson purchased the metal structure at a tax sale held by the Sheriff of St. John the Baptist Parish due to the unpaid taxes of Country Club Restaurant & Lounge, Inc.[10] After purchasing the improvements, Wilson did not pay the taxes that he owed on the improvements. As a result of this nonpayment, Wilson's interest in the improvements was adjudicated to St. John the Baptist Parish (the "Parish") on June 26, 2008.[11]

Nevertheless, on July 26, 2010, following the expiration of the three (3) year redemptive period from Wilson's purchase at the tax sale in 2007, Wilson filed a state court proceeding to quiet his tax title to the improvements.[12] Concurrently, he contacted representatives of the underlying property owner, Esparros, to advise them of the tax sale. He was told by an Esparros representative that the tax sale was a mistake and would be cancelled.[13] An Esparros representative then sent correspondence to the tax assessor, Whitney Joseph, Jr. (the "Assessor"), which indicated that the property had been damaged by a fire and that the improvements were the property of Esparros, having been turned over to Esparros at the time that Country Club Restaurant & Lounge, Inc.

---

[8] *Id.* at pp. 10-15.

[9] Rec. Doc. 50-5 at p. 12.

[10] *Id.*

[11] Rec. Doc. 53-5.

[12] Rec. Doc. 1-4 at pp. 1-4.

[13] Rec. Doc. 50-11 at p. 2.

vacated the premises in 2006.[14]  It is undisputed that the underlying property and the improvements

had been assessed separately,[15] and therefore, Esparros did not receive notice of any tax assessments

in the improvements or notice of delinquency in payment of those taxes.  Accordingly, Esparros

requested the Assessor to unwind the tax sale and refund the purchaser's money, place all property

in the name of Esparros, and bill Esparros for any back taxes owed.[16]

Having been advised that Esparros would seek to cancel the sale, Wilson's counsel sent

notices to both the Assessor and the Sheriff for St. John the Baptist Parish, requesting an opportunity

to be heard and to present evidence on the validity of the tax sale prior to any action being taken to

terminate Wilson's alleged property interest.[17]

Despite the notification and the request to be heard, without providing Wilson with the

opportunity to be heard, the Assessor's Office submitted an online change order request to the

Louisiana Tax Commission, seeking retroactive cancellation of the assessment upon which Wilson's

tax title rested.[18]  In this electronic request, the Assessor stated that the reason for the cancellation

was that the building was destroyed by a fire and that Esparros was the correct owner of the

building.[19]  However, Esparros's representative has since testified in his deposition that the

---

[14] Rec. Doc. 50-6 at pp. 1-2.  Although, as discussed later, Esparros claims that it leased its premises to Country Club Restaurant & *Club*, Inc., the correspondence sent from the Esparros representative to the Assessor specifically states that the previous tenant was Country Club Restaurant & *Lounge*, Inc.

[15] Rec. Doc. 48-3 at p. 1.  Wilson contends that it was the "ownership interest in the improvements which was separately assessed."  Rec. Doc. 55-1 at p. 2.  Regardless of whether it was the "ownership interest in the improvements" or the improvements themselves that had been separately assessed, it is undisputed that the property and the improvements were not assessed together.

[16] *Id.*

[17] *Id.* at 3.

[18] Rec. Doc. 50-8 at p. 6.

[19] *Id.*

improvements purchased by Wilson did not suffer any damage from a fire.[20]  Nonetheless, on July 28, 2010, the Louisiana Tax Commission granted the change order request and cancelled the underlying assessment and the resulting tax sale of the metal structure.[21]

On October 1, 2010, Wilson filed this suit against Esparros, the Assessor, and the Louisiana Tax Commission for their alleged violations of his procedural due process rights pursuant to 42 U.S.C. § 1983 as a result of these events.[22]  Later, Wilson dismissed the Tax Commission and amended his complaint to name the individual members of the Tax Commission as defendants (the "Tax Commissioners").[23]  Wilson alleges that the Tax Commissioners promulgated a policy that permitted the cancellation of tax sales, and in turn the deprivation of property, without providing prior notice to, or an opportunity to be heard by, the individual whose property interest derived from the tax sale.  Wilson alleges that Esparros and the Assessor used this system to deprive Wilson of his rights without providing him with due process of law.

Specifically, Wilson alleges that the Assessor submitted to the Tax Commission a request to cancel the assessment and Wilson's tax sale purchase, knowing that the cancellation would result in the loss of property without first providing Wilson with notice or an opportunity to be heard.  Wilson alleges that the Assessor took this action only because an Esparros representative contacted the Assessor and told the Assessor that the property was destroyed by a fire and that Esparros was the true owner of the structure purchased by Wilson at the tax sale.  Wilson alleges that the Assessor

---

[20] Rec. Doc. 50-8 at p. 7.  No party has submitted any evidence establishing that the improvements were damaged by the fire.

[21] *Id.*

[22] Rec. Doc. 1.

[23] Rec. Doc. 24.

acted without confirming this information.

Initially, this case was assigned to Judge A.J. McNamara, Section "D" of the Eastern District of Louisiana.[24]  On January 25, 2011, the Assessor filed a motion to dismiss for failure to state a claim upon which relief could be granted, wherein the Assessor argued that Wilson's claims against the Assessor should be dismissed because the Assessor is entitled to qualified immunity.[25]  On March 11, 2011, Judge McNamara denied the Assessor's motion, finding that Wilson's complaint alleged that the Assessor's actions denied Wilson of the property right acquired in the tax sale without due process; that Wilson's right was clearly established at the time of the Assessor's alleged conduct; and that the Assessor's actions were objectively unreasonable.[26]  On June 2, 2011, this case was transferred to Judge Lance M. Africk, Section "I" of this court.[27]  On September 29, 2011, the Assessor filed a Motion for Summary Judgment.[28]  On October 2, 2011, Wilson filed a Motion for Summary Judgment.[29]  Thereafter, on October 11, 2011, this case was transferred to this Section, Section "G" of this court.[30]

## II.  The Pending Motions

### A.  The Assessor's Motion

---

[24] Rec. Doc. 2.

[25] Rec. Doc. 12.

[26] Rec. Doc. 19.

[27] Rec. Doc. 35.

[28] Rec. Doc. 48.

[29] Rec. Doc. 50.

[30] Rec. Doc. 52.

On September 29, 2011, the Assessor filed a Motion for Summary Judgment,[31] seeking summary judgment against Wilson on the grounds that Wilson took no action to appeal the decision of the Louisiana State Tax Commission or to contest its decision in state court. The Assessor argues that Wilson could have petitioned for a declaratory judgment in state court but that he elected not to do so.[32] Additionally, the Assessor argues that, at the time of the cancellation, the improvements had been adjudicated to the Parish because Wilson had failed to pay taxes on the improvements in 2007 and therefore his ownership interest in the improvements is placed into question.[33] Further, the Assessor argues that summary judgment in the Assessor's favor is warranted on the basis of qualified immunity.[34] Specifically, the Assessor argues that it is the Tax Commission that makes the final decision as to whether to delete or to change an assessment and, as such, that the Assessor cannot be held liable for the cancellation of the assessment.[35] The Assessor argues that he violated no clearly established constitutional right in requesting the change order without first providing Wilson with notice or an opportunity to be heard because state law authorizing change orders contains no such requirements.

Wilson filed his opposition on October 11, 2011.[36] Therein, Wilson argues that there is no requirement that he first pursue a state remedy and that this Court has previously rejected the Assessor's arguments regarding qualified immunity. First, Wilson attacks the underlying premises

---

[31] Rec. Doc. 48.

[32] Rec. Doc. 48-4 at p. 7.

[33] *Id.* at p. 6.

[34] *Id.* at p. 5.

[35] *Id.* at pp. 5-6.

[36] Rec. Doc. 55.

of the Assessor's argument, stating that it is based on facts that are not true because the Assessor did not "correct" the 2006 assessment because the 2006 assessment was not in error[37] and that it was Wilson who owned the metal structure.[38] Thus, Wilson argues, "More accurate would be the statement that the Assessor cancelled the long-standing assessment without making any factual determinations whatsoever, without giving notice to plaintiff who was the presumed owner of the property, in violation of the specific requirements of Louisiana Law in complete disregard of plaintiff's constitutional right to due process."[39] Wilson also points out that the metal structure was not damaged or destroyed by fire.[40]

In support of his claim for ownership of the metal structure, Wilson argues that the landlord must either demand removal or make payment for improvements built upon the landlord's land, that Esparros did not do so and therefore cannot claim to be the rightful owner of the improvements, and that he, Wilson, is the owner of the metal structure because he purchased the improvements at a tax sale and the three year redemptive period has expired.[41]

Regarding Wilson's state remedy, Wilson argues that there is no requirement that he first pursue a state remedy and that, further, because the assessment and tax sale were cancelled, the pending state court action to confirm his tax title is now moot.[42] Further, Wilson argues that the procedure employed by the Tax Commission is "violative of due process" because it does not

---

[37] *Id.* at p. 1.

[38] *Id.* at p. 2.

[39] *Id.* at pp. 2-3.

[40] *Id.* at p. 3.

[41] *Id.* at p. 4.

[42] *Id.* at p. 5.

require any evidence or provide an opportunity to be heard before an assessment or sale is changed or cancelled.[43] Wilson argues that he "does not contest the correctness of any assessment, but challenges the termination of his property interest without notice or an opportunity to be heard,"[44] such that the existence of a state procedure for challenging an assessor's cancellation of a tax title is irrelevant.

Regarding qualified immunity, Wilson argues that the Assessor has presented no new arguments not taken into consideration in Judge MacNamara's denial of the Assessor's Motion to Dismiss and that Judge McNamara's earlier decision on the issue should stand.[45] Further, Wilson argues that the Assessor's actions were objectively unreasonable because the Assessor did not follow the procedures set forth under Louisiana law, as the Assessor did not obtain a statement under oath or make any effort to verify the facts upon which the cancellation was based.[46] Wilson notes that even though the metal structure was adjudicated to the Parish for his own failure to pay taxes, under Louisiana law, he claims the assessed ownership does not change in such a situation, and the Assessor was not relieved of his obligation to obtain an affidavit or verify the reasons for cancellation.[47] Therefore, Wilson argues that "[a]s an owner, [he] had the right to redeem this subsequent adjudication to the Parish [and] at the time of the Assessor's cancellation requests [his redemptive period had not yet expired]."[48]

---

[43] *Id.* at p. 6.

[44] *Id.*

[45] *Id.* at p. 5.

[46] *Id.* at p. 7.

[47] *Id.*

[48] *Id.* at p. 8.

In sum, Wilson argues that the Assessor's motion should be denied because Wilson is not required to first pursue state remedies, the Assessor is not entitled to qualified immunity, and Wilson's due process rights were violated when his redemptive property rights were terminated without notice or an opportunity to be heard.

### B. Wilson's Motion

On October 2, 2011, Wilson filed a Motion for Summary Judgment,[49] seeking summary judgment concluding that he held a property interest in the metal structure at issue in this case; that Esparros, the Assessor, and the Tax Commission participated in and implemented a process that unconstitutionally terminated Wilson's property interest without providing him notice and an opportunity to be heard; and that Wilson is entitled to judgment against the defendants for their actions.

First, Wilson notes that the procedure for correcting an erroneous tax assessment requires the property owner to execute a statement of facts under oath, which the assessor must verify and approve, but that state law makes no provision for notice to, or an opportunity to be heard by, the tax sale purchaser prior to the cancellation of the sale.[50] Wilson then argues that the Assessor and the Tax Commission did not comply with even this "minimal" procedure because no affidavit was submitted, the Assessor "made no effort to verify any factual assertion in the letter [submitted requesting the assessment change] . . . ," and the Tax Commission made no effort to determine

---

[49] Rec. Doc. 50.

[50] Rec. Doc. 50-3 at p. 3.

whether the Assessor had complied with the law.[51]  Further, Wilson argues that the Tax Commission's "virtually instant online assessment cancellation system" arbitrarily terminates tax titles and violates the law.[52]  Additionally, Wilson notes that the reason advanced for the cancellation of the assessment–that the building had been destroyed by fire–has been shown to be false, according to the evidence before this Court.[53]

Regarding ownership of the metal structure, Wilson argues that Esparros's claims of ownership fail because Louisiana law provides a procedure for acquiring ownership of improvements erected by tenants upon leased land.  Specifically, Wilson argues that the landowner must compensate the tenant for the improvement, in the amount of either the current value of the materials or the enhanced value of the immovable, before the landowner may take possession of the improvements.[54]  As Esparros has not sought removal or made payment to its former lessee, Wilson argues that Esparros has never, and does not currently, own the improvements.[55]  Instead, Wilson argues that he is the rightful owner of the improvements by way of his tax sale purchase of the metal structure, particularly because in Louisiana, tax sales are presumed valid and that a tax deed is *prima facie* evidence of a valid tax sale.[56]

Wilson contends that the lack of compliance with the procedure set forth under Louisiana

---

[51] *Id.*

[52] *Id.* at pp. 3-4.

[53] *Id.* at p. 8.

[54] *Id.* at p. 9.

[55] *Id.* at p. 9-10.

[56] *Virtocom Fin., Inc. v. Palo Verde Trading Co.* 869 So. 2d 194, 197 (La. App. 5 Cir. 2004) (citing La. Const. Art. 10 § 11 (1921) and La. Const. Art. 7 § 25 (1974)).

law for altering or cancelling a tax assessment and tax sale resulted in the unconstitutional termination of his property rights without due process of law. Specifically, Wilson argues that the Assessor is liable for his actions because he "proceeded to terminate plaintiff's property interest" without having received a sworn statement and having made no effort to verify the facts submitted in support of cancellation.[57] Wilson contends that the Tax Commission violated his rights by maintaining and utilizing an online assessment cancellation procedure that, despite the specific requirements of Louisiana law, includes no requirement for a statement under oath prior to the termination of a tax purchaser's interest.[58] Additionally, Wilson argues that the individual members of the Tax Commission "approved the termination of [Wilson's] tax title without providing any notice or opportunity to be heard . . . ."[59] Wilson argues that Esparros took advantage of this allegedly lax and unconstitutional procedure.[60]

The Assessor, Esparros, and the Tax Commissioners[61] each filed responses in opposition to Wilson's motion.[62] The Assessor responds that Wilson's claims must fail because Wilson "had no property interest in the improvement at the time the assessment was corrected."[63] The Assessor

---

[57] Rec. Doc. 50-3 at p. 11.

[58] *Id.*

[59] *Id.*

[60] *Id.* at p. 13.

[61] The Court notes that the Tax Commissioners' opposition response was entitled "Louisiana Tax Commission's Response to Motions for Summary Judgment." Rec. Doc. 59. However, the Louisiana Tax Commission was terminated as a party on March 21, 2011. It is the individual Tax Commissioners who remain as defendants. Therefore, this Court properly will refer to these parties as the "Tax Commissioners," despite their own characterization otherwise.

[62] Rec. Doc. 53 (the Assessor); Rec. Doc. 54 (Esparros); Rec. Doc. 59 (the Tax Commissioners).

[63] Rec. Doc. 53.

12

argues that Wilson lacks a property interest in the improvements because the improvements were adjudicated to the Parish for Wilson's failure to pay *ad volorem* taxes on the improvements in 2007, resulting in the adjudication of his interest in the improvements to the Parish, and "[t]his fact defeats all other issues" because "[i]f Plaintiff has no property interest, he has no standing in this court."[64] Further, the Assessor argues that the policies and procedures for changing or cancelling an assessment were followed and that the Assessor does not make the final decision regarding whether to change or cancel an assessment, such that the Assessor is not liable for the Tax Commission's ultimate decision that resulted in the cancellation of the tax sale.[65] The Assessor argues that Wilson could have petitioned for a declaratory judgment in state court, but that he did not do so.[66] The Assessor concludes that this Court should deny Wilson's motion because, according to the Assessor, Wilson had no property interest in the metal structure at the time the assessment was corrected and the tax sale was cancelled.[67]

In Esparros's response, Esparros "supports the position of the Assessor in the Assessor's Motion for Summary Judgment" and argues that Esparros has no liability in this matter.[68] Esparros asserts that Wilson's claims of property ownership are "moot as to the claims against Esparros . . . ."[69] Specifically, Esparros disputes that Wilson purchased the metal structure in a

---

[64] *Id.*

[65] *Id.* at p. 3.

[66] *Id.*

[67] *Id.* at p. 6.

[68] Rec. Doc. 54 at p. 2.

[69] *Id.*

proper tax sale for unpaid 2006 *ad valorem* taxes.[70]  Instead, Esparros simultaneously claims to be

the proper owner of the structure and asserts that the property was transferred back to the Parish due

to Wilson's failure to pay taxes on the property.[71]

Esparros states, "There is a genuine issue of material fact as to whether the ownership of the

building in question was legally purchased at tax sale by Wilson and was capable of being owned

by Wilson via proper title as opposed to the rightful ownership of Esparros."[72]  Esparros then directs

the Court to two provisions of Louisiana law, Civil Code articles 491 and 492, which Esparros

argues demonstrate Esparros's ownership of the metal structure.[73]  Also according to Esparros, the

cash sale of the metal structure from RJ's Lounge to Country Club Restaurant & Lounge, Inc. is

flawed on its face because the sale and the lease allegedly involved different Country Club entities.[74]

Further, Esparros argues that "[t]here is a genuine issue of material fact [as] to whether the purported

act of Cash Sale intended to transfer the entire building structure located at 1107 East Airline

Highway in LaPlace, Louisiana."[75]  Esparros argues that the sale can be construed to convey

ownership of the entire property, rather than merely the improvement, and thus Esparros concludes,

---

[70] *Id.* at p. 5.

[71] *Id.* ("Esparros Properties Airlines, LLC is the proper owner of the immovable and improvements thereon. The Assessor for St. John The Baptist Parish has set forth legal argument which controvert Plaintiff's allegations and show that the property in question was actually transferred back to the parish for Plaintiff's failure to pay subsequent taxes on the property in question.").  The Court notes that it is undisputed that the property was adjudicated to the Parish for nonpayment of taxes.  *See* Rec. Doc. 48-4 at pp. 15-18; Rec. Doc. 55 at p 7.

[72] *Id.*

[73] *Id.* at p. 6 (citing and quoting La. C.C. arts. 491, 492).

[74] *Id.* at p. 7.

[75] *Id.*

"Because there is no evidence whatsoever of any juridical act of transfer from Esparros to RJs Lounge, the purported Cash Sale above is null and void and has no legal effect."[76]

In the Tax Commissioners' response, they argue that Wilson has not specifically pled any particular relief sought against them.[77]  They argue that they were never apprised of Wilson's claim in connection with the issuance of the change order and state that they are willing to reverse the change order if presented with competent evidence.[78]  Further, they state that they were "duped" into canceling the tax sale by the Assessor's unreasonable actions.[79]  Appended to the response is the affidavit of Charles Abels, Administrator for the Tax Commission.[80]  Mr. Abels avers that the Tax Commission was unaware that there existed a tax sale purchaser who may have acquired rights that were impaired by the change order.[81]  Mr. Abels also avers that "the practice of requiring a statement under oath was more or less abandoned many years ago due to the number of change orders processed by the Tax Commission each year," despite the "statute that apparently requires an assessor to submit its change order request under oath."[82]  However, Mr. Abels noted that the Tax Commission "assumes that a request for a change order by an assessor is made in good faith and is tantamount to a statement made under oath because it is made by a public official in the performance

---

[76] *Id.* at p. 8.

[77] Rec. Doc. 59 at p. 1.

[78] *Id.*

[79] *Id.* at p. 2.

[80] Rec. Doc. 59-1.

[81] *Id.* at p. 3.

[82] *Id.* at p. 2.

of his official duties."[83]

Following leave of Court, on October 27, 2011, Wilson filed a reply brief .[84]  Therein, Wilson argues that Esparros "attempts to create factual controversies precluding summary judgment which do not exist."[85]  Specifically, Wilson notes the discrepancy in the name of the Country Club entity that purchased the improvements and responds that this discrepancy is irrelevant and merely a typographical error.[86]  Wilson then reasserts his position that he is the true owner of the metal structure in question and that the subsequent adjudication of the property to the Parish is immaterial.[87]  Finally, Wilson argues that the Civil Code provisions cited by Esparros are inapplicable and that Esparros "has never complied with the applicable provisions of law that would entitle it to claim ownership."[88]  Therefore, Wilson concludes that there is no dispute that (1) RJ's Lounge constructed the metal structure with the consent of Esparros; (2) the structure was separately assessed to Country Club Restaurant & Lounge, Inc. for several years prior to the tax sale; (3) Wilson purchased the structure at a tax sale; (4) after the end of the statutory redemptive period and based upon misrepresentations, Esparros had the Assessor cancel the assessment, resulting in the cancellation of the tax sale; and (5) the Assessor cancelled the assessment without providing Wilson with notice or an opportunity to be heard, in violation of his constitutional rights.[89]

---

[83] *Id.*

[84] Rec. Doc. 61.

[85] *Id.* at p. 1.

[86] *Id.* at pp. 1-2.

[87] *Id.* at p. 2.

[88] *Id.* at p. 3.

[89] *Id.*

### III. Law and Analysis

#### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[90] When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[91] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[92]

If the dispositive issue is one on which the moving party bears the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[93] The nonmoving party can defeat the motion by either countering with sufficient evidence of its own, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving

---

[90] Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23(1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[91] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[92] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[93] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-65 (5th Cir. 1991).

party."[94]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[95] Then the burden shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[96] The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.[97]

## B. Requirements for a Procedural Due Process Claim

Wilson contends that the defendants are liable under Section 1983 because they allegedly deprived him of property without providing him with due process of law. As the Fifth Circuit has explained, "[t]he central theme of procedural due process under the federal constitution is that parties whose liberty or property rights are affected by governmental action are entitled to notice and an opportunity to be heard in a meaningful manner."[98] A plaintiff must first establish a denial of a constitutionally protected property right in order to establish a procedural due process violation[99];

---

[94] *Id.* at 1265.

[95] *See Celotex*, 477 U.S. at 325.

[96] *See id.* at 324.

[97] *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

[98] *Price v. City of Junction*, 711 F.2d 582, 589 (5th Cir. 1983).

[99] *Bryan v. City of Madison*, 213 F.3d 267, 274 (5th Cir. 2000).

that is, a plaintiff must establish both the existence of a property right and the deprivation of that right. Property rights are not created by the United States Constitution; instead, a plaintiff must show that he was denied a property right that stems from an independent source, such as state law.[100] If a plaintiff establishes that he has been deprived of a protectible property interest, the due process clause requires that the deprivation by adjudication "be preceded by notice and an opportunity for hearing appropriate to the nature of the case."[101] Where the deprivation is not preceded by such notice and hearing, a plaintiff may have a valid claim under Section 1983 for a procedural due process violation.

### C. Whether Wilson was Deprived of a Property Right by Virtue of the Cancellation of the Tax Sale

#### 1. Parties' Arguments

The parties present a number of arguments concerning whether Wilson did or did not have a property right in the metal structure at issue in this case at the time the tax sale was cancelled. In Wilson's Motion for Summary Judgment, Wilson argues that the cancellation of the tax sale deprived Wilson of property. For support, Wilson relies on Judge McNamara's previous Order and Reasons[102] denying the Assessor's Motion to Dismiss,[103] wherein Judge McNamara held that

---

[100] *Id.* at 274-75.

[101] *Small Engine Shop, Inc. v. Cascio*, 878 F.2d 883, 887 (5th Cir. 1989) (citing *Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306 (1950)).

[102] Rec. Doc. 19.

[103] Rec. Doc. 12.

Wilson's complaint sufficiently alleged that he was deprived of property by alleging that he was deprived of his ownership interest in the improvements by virtue of the cancelled tax title.[104] Wilson notes that Esparros misrepresented to the Assessor that the improvements were destroyed by a fire, suggesting that there were no improvements existing and able to be purchased at the time of the tax sale. Wilson also disputes Esparros's claim that it is the owner of the improvements, arguing that Esparros failed to follow the procedures provided by the Louisiana Civil Code that would establish Esparros as owner of the improvements.

In the Assessor's Motion for Summary Judgment, as well as in the Assessor's opposition to Wilson's Motion for Summary Judgment, the Assessor responds that Wilson was not deprived of property because Wilson did not have a property interest in the improvements at the time the tax sale was cancelled. Specifically, the Assessor argues that because Wilson did not pay the 2007 *ad valorem* taxes on the improvements and because this failure resulted in the improvements being adjudicated to the Parish, starting in 2008, Wilson had no property interest in the improvements.

Esparros makes a similar argument in its opposition to Wilson's Motion for Summary Judgment, contending that Wilson was not deprived of property because Wilson did not have a property interest in the improvements at the time the tax sale was cancelled. Specifically, Esparros argues that certain portions of the Louisiana Civil Code require either an instrument filed for registry or a judicial act of the owner of an entire building before an improvement can be recognized as property belonging to a tenant, such that Country Club's purchase was not a valid transfer of

---

[104] Rec. Doc. 19 at pp. 6-7.

ownership. Further, Esparros argues that the purported cash sale from RJ's Lounge to Country Club is not sufficient evidence of a transfer of ownership of the improvements at issue in this case because it is not clear that the same entity purchased the improvements as leased the premises from Esparros and because the description contained in the purported tax sale to Wilson could be construed as selling the entire premises, which no party argues it did, thus making the sale null and void according to Esparros.

Wilson responds that he was, in fact, deprived of property when his tax sale was cancelled. First, Wilson points to the affidavit of Rita Langston, president of RJ's Lounge, who stated that the improvements were constructed by RJ's Lounge with the consent of Esparros.[105] Therefore, Wilson argues that, under Louisiana law referenced in his motion, the improvements were owned by RJ's Lounge unless purchased by Esparros, which Wilson contends never occurred.

Wilson also responds that the discrepancy in the name of the purchaser and the name of Esparros's lessee is irrelevant, as the deed clearly denominates Country Club Restaurant & Lounge, Inc. as the purchaser of the improvements from RJ's Lounge, and Country Club Restaurant & Lounge, Inc. is the same entity that was the tax debtor and assessed owner prior to Wilson's tax sale purchase. Wilson argues that he does not base his claim of ownership on the lease between Esparros and its tenant, but rather on Country Club Restaurant & Lounge, Inc.'s purchase of the improvements and Country Club Restaurant & Lounge, Inc.'s subsequent delinquent tax status. Therefore, Wilson argues that the discrepancy pointed out by Esparros is immaterial. Wilson further

---

[105] Rec. Doc. 55-5.

argues that the denotation in the lease of "Country Club Restaurant & Club, Inc." is a clear typographical error because it states "Club" twice, because the Louisiana Secretary of State does not contain a listing for Country Club Restaurant & Club, Inc., and because Michael Beard, an officer for Country Club Restaurant & Lounge, Inc., signed the lease with Esparros.

Wilson further argues that Esparros has failed to provide any evidence to support its claim that it became the owner of the improvements at any time after RJ's Lounge constructed the improvements. Finally, Wilson argues that Esparros misinterprets the Louisiana Civil Code for the proposition that a judicial act or an instrument filed into the registry is necessary for a lessee to become the owner of improvements, and that therefore, neither RJ's Lounge and Country Club Restaurant & Lounge, Inc., ever were owners of the improvements. Wilson restates his position that Esparros only could become the owner of the improvements by compensating the tenant for the improvements in the amount of either the current value of the materials or the enhanced value of the immovable, which it never did.

### 2. Analysis

The parties dispute whether Wilson held a property interest in the improvements at the time that the tax sale was cancelled, but the Court need not reach a conclusion on that issue. Even assuming, for purposes of considering the facts in the light most favorable to Wilson, that Wilson had a property interest in the improvements, Wilson has not demonstrated that the cancellation of the tax sale *deprived* him of this property interest, as is necessary to support his procedural due

process claim. Although Judge McNamara originally determined that Wilson alleged sufficient facts to support his claim, there is an important difference between alleging sufficient facts to overcome a motion to dismiss and providing enough evidence to succeed on, or defeat, a motion for summary judgment. Even assuming the facts favorable to Wilson, he has not established, as a matter of law, that he has been deprived of any interest in property by the defendants' actions here.

In asserting a claim that he was deprived of property without due process of law, Wilson contends that he was denied ownership of the improvements by virtue of the tax sale cancellation. Prior to the cancellation of the tax sale, on July 26, 2010, Wilson filed suit in the 40th Judicial District Court for the Parish of St. John the Baptist to quiet title and confirm his ownership of the improvements.[106] No party has asserted that this suit has been decided or otherwise adjudicated. A tax-sale purchaser may quiet title by following the procedures set forth in Louisiana Revised Statute, Section 47:2266(A), which states:

> A. (1) After expiration of the redemptive period, an acquiring person may institute an ordinary proceeding against the tax sale parties whose interests the petitioner seeks to be terminated. The petition shall contain a description of the property, the time and place of the sale, and the name of the officer who made the sale, the page and record book and date of filing of the tax sale certificate, and for adjudicated properties sold or donated by a political subdivision, reference to the page of record book and date of filing of the sale or donation, notice that the petitioner is the holder of tax sale title to the property by virtue of tax sale or is the owner of the property by virtue of a sale or donation of adjudicated property, and notice that the title and full ownership in the property will be confirmed unless a proceeding to annul is instituted within six months after the date of service of the petition and citation. This suit shall be brought in the parish in which the property is located unless it lies in two or more parishes, in which case this suit may be instituted in either of the parishes.

---

[106] Rec. Doc. 1-4.

(2) The petition and citation shall be served as in ordinary suits . . . . If no proceeding to annul the sale has been instituted after the lapse of six months after the date of service of petition and citation, judgment shall be rendered quieting and confirming the title and the full ownership interest therein.[107]

Here, Wilson argues that his suit to quiet title was rendered moot by the cancellation of the tax sale, such that he was deprived of his ability to quiet title and confirm his ownership. However, the cancellation of the tax sale does not prevent Wilson from seeking to quiet title, and therefore, the actions of the defendants did not render the suit to quiet title moot, as Wilson contends. In *Jamie Land Company v. Atwood*,[108] the Louisiana First Circuit Court of Appeal held that an individual who acquired title at a tax sale, which title was later cancelled by the Louisiana Tax Commission, can challenge the cancellation in a suit to quiet title.[109] Therein, the First Circuit stated that a plaintiff may challenge the propriety of the cancellation of a tax sale by the Tax Commission in a suit to quiet title.[110] Here, before the tax sale was cancelled, Wilson had filed suit to quiet title, but he apparently has not pursued that claim any further, or, if he was unsuccessful, has not provided any information to this Court as to the reasoning. Therefore, Wilson was not deprived of property when the defendants cancelled the tax sale because, if Wilson can demonstrate in a suit to quiet title that the tax sale cancellation was improper, Wilson will still be able to quiet title, unless, of course, quieting title would be improper for other reasons.

---

[107] La R.S. § 47:2166(A).

[108] 965 So. 2d 873 (La. App. 1 Cir. 2007).

[109] *Id*. at 877.

[110] *Id*.

Additionally, Wilson alleged in his complaint that the cancellation of the tax sale deprived him of possession of the improvements.[111] However, Wilson himself has stated that he has never been in possession of the improvements and that Esparros had possession of the improvements prior to the time when the tax sale was cancelled.[112] Louisiana law provides the procedure for a tax sale purchaser to obtain possession of the purchased property:

> Writ of possession
>
> (A) When necessary to comply with an order of a political subdivision for the purpose of enforcing property standards, upon the presentation of the order and a certified copy of a tax sale certificate for immovables to a judge of a competent jurisdiction (determined by the value of the immovables described and not the amount of the taxes), the judge shall grant ex parte an order of seizure and possession, commanding the sheriff to seize the property and place the purchaser in actual possession. A writ of possession shall be issued by the clerk, but the purchaser may take actual possession without the order with the consent or acquiescence of the tax debtor or otherwise, provided no force or violence is used.[113]

Thus, without the acquiescence of Esparros by it voluntarily relinquishing possession of the improvements, Wilson would have been required to seek an order of seizure and possession to obtain possession of the improvements. There is no evidence here to show that Wilson ever engaged in the proper process to be placed in possession of the improvements, and therefore, he was not in possession of the property such that the cancellation of the tax sale could deprive him of possession.

Therefore, at the time of the cancellation of the tax sale, Wilson was not in possession of the property because he had not followed the procedures under Louisiana law to obtain possession, nor

---

[111] Rec. Doc. 1 at p. 7.

[112] Rec. Doc. 50-3 at p. 10 ("The fact of the matter is that Esparros has appropriated the improvements by leasing same to third parties . . . .").

[113] La. R.S. § 47:2158.

had he followed the Louisiana procedure for quieting title in the improvements. The cancellation of Wilson's tax sale by the defendants did not prevent Wilson from asserting his alleged property rights by challenging the cancellation of the tax sale in an appropriate forum, nor did it deprive him of possession of property, as he never was in possession of the improvements. Accordingly, Wilson is in the same position today as he was prior to the cancellation of the tax sale, and thus, Wilson was not deprived of property without due process of law.

Considering that Wilson's position that he has been deprived of a property right without due process of law is not supported by Louisiana law, the Court need not address the other arguments raised by the parties concerning the other elements of Wilson's Section 1983 claim or the elements of the Assessor's affirmative defense of qualified immunity. Further, because Louisiana law does not support Wilson's assertion that he was deprived of property, Wilson has not met the first element of his procedural due process claim, and therefore, he is unable to prove his claim pursuant to Section 1983 against the defendants for their alleged violations of Wilson's procedural due process rights.[114]

## IV. Conclusion

The material facts are not disputed here. Wilson alleges that the defendants violated his procedural due process rights by depriving him of property, without prior notice or hearing, when the defendants' actions resulted in a cancellation of the tax sale from which Wilson purchased the improvements at issue. Assuming that Wilson held a legal property right in the improvements at the time of the cancellation of the tax sale, application of Louisiana law does not support Wilson's

---

[114] *Bryan*, 213 F.3d at 276 ("Because [plaintiff] has failed to establish the denial of a property right, his due process claims fail.").

asserted conclusion that he was *deprived* of this property; a necessary element to his claim under Section 1983. Therefore, for these reasons, the Assessor's Motion for Summary Judgment is granted. Similarly, Wilson's Motion for Summary Judgment against all defendants must be denied for his same failure to establish an essential element of his claim Accordingly;

**IT IS ORDERED** that the Assessor's Motion for Summary Judgment[115] is **GRANTED**.

**IT IS FURTHER ORDERED** that Wilson's Motion for Summary Judgment[116] is **DENIED**.

**IT IS FURTHER ORDERED** that Wilson's claims against the Assessor are **DISMISSED WITH PREJUDICE**, each party to bear its own costs..

**NEW ORLEANS, LOUISIANA**, this __11th__ day of July, 2012.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[115] Rec. Doc. 48.

[116] Rec. Doc. 50.