UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PATRICK WILSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-3338** |
| **STATE OF LOUISIANA,** *EX REL* **LOUISIANA TAX COMMISSION, WHITNEY JOSEPH, JR. ASSESSOR FOR THE PARISH OF ST. JOHN THE BAPTIST; AND ESPARROS PROPERTIES AIRLINE, L.L.C.** | **SECTION: "G"(3)** |

## ORDER AND REASONS

Before the Court is Plaintiff Patrick Wilson's ("Wilson") Motion for Reconsideration,[1] wherein Wilson requests that this Court reconsider its prior ruling dismissing with prejudice his claims for procedural due process pursuant to 42 U.S.C. § 1983.[2] After considering, the pending motion, the memorandum in support, the oppositions, the record, and the applicable law, the Court will deny the pending motion.

### I. Background

#### *A. Factual Background*

The purchased improvement at issue in this case is a metal structure (a dance floor), which is attached to another building owned by Defendant Esparros Properties Airline, LLC ("Esparros").[3] The structure was erected by a former tenant of Esparros, RJ's Lounge, Inc. ("RJ's Lounge"), during a time when RJ's Lounge leased the main property from Esparros.[4]

---

[1] Rec. Doc. 84.

[2] Rec. Doc. 79.

[3] *Id*.

[4] Rec. Doc. 50-6 at p. 5.

There is no evidence that Esparros ever purchased the improvements or demanded that RJ's Lounge remove the improvements after RJ's Lounge's lease expired and RJ's Lounge vacated the premises. RJ's Lounge subsequently sold the improvements to another entity, Country Club Restaurant & Lounge, Inc.[5] Wilson alleges that this is the same entity that leased the premises from Esparros after RJ's Lounge's lease expired; however, that lease lists "Country Club Restaurant and *Club*, Inc." as the tenant of Esparros's premises. At all relevant times, the improvements were assessed separately from the remainder of the property.[6] In 2006, Country Club Restaurant & Lounge, Inc. (or *Club*, as stated in the lease) vacated the premises and thereafter did not pay the *ad valorem* taxes on the improvements.[7]

The following year, in 2007, Wilson purchased the metal structure at a tax sale held by the Sheriff of St. John the Baptist Parish ("the Parish") due to the unpaid taxes of Country Club Restaurant & Lounge, Inc.[8] After purchasing the improvements, Wilson did not pay the taxes that he owed on the improvements. As a result of this nonpayment, Wilson's interest in the improvements was adjudicated to St. John the Baptist Parish on June 26, 2008.[9]

Nevertheless, on July 26, 2010, following the expiration of the three (3) year redemptive period from Wilson's purchase at the tax sale in 2007, Wilson filed a state court proceeding to quiet his tax title to the improvements.[10] Concurrently, he contacted representatives of the underlying

---

[5] *Id*. at pp. 6-8.

[6] *Id*. at pp. 10-15.

[7] Rec. Doc. 50-5 at p. 12.

[8] *Id*.

[9] Rec. Doc. 53-5.

[10] Rec. Doc. 1-4 at pp. 1-4.

property owner, Esparros, to advise them of the tax sale. He was told by an Esparros representative that the tax sale was a mistake and would be cancelled.[11] An Esparros representative then sent correspondence to the tax assessor, Whitney Joseph, Jr. (the "Assessor"), which indicated that the property had been damaged by a fire and that the improvements were the property of Esparros, having been turned over to Esparros at the time that Country Club Restaurant & Lounge, Inc. vacated the premises in 2006.[12] It is undisputed that the underlying property and the improvements had been assessed separately,[13] and therefore, Esparros did not receive notice of any tax assessments in the improvements or notice of delinquency in payment of those taxes. Accordingly, Esparros requested the Assessor to unwind the tax sale and refund the purchaser's money, place all property in the name of Esparros, and bill Esparros for any back taxes owed.[14]

Having been advised that Esparros would seek to cancel the sale, Wilson's counsel sent notices to both the Assessor and the Sheriff for St. John the Baptist Parish, requesting an opportunity to be heard and to present evidence on the validity of the tax sale prior to any action being taken to terminate Wilson's alleged property interest.[15]

Despite the notification and the request to be heard, without providing Wilson with the opportunity to be heard, the Assessor's Office submitted an online change order request to the

---

[11] Rec. Doc. 50-11 at p. 2.

[12] Rec. Doc. 50-6 at pp. 1-2. Although, as discussed later, Esparros claims that it leased its premises to Country Club Restaurant & *Club*, Inc., the correspondence sent from the Esparros representative to the Assessor specifically states that the previous tenant was Country Club Restaurant & *Lounge*, Inc.

[13] Rec. Doc. 48-3 at p. 1. Wilson contends that it was the "ownership interest in the improvements which was separately assessed." Rec. Doc. 55-1 at p. 2. Regardless of whether it was the "ownership interest in the improvements" or the improvements themselves that had been separately assessed, it is undisputed that the property and the improvements were not assessed together.

[14] *Id*.

[15] *Id*. at 3.

3

Louisiana Tax Commission, seeking retroactive cancellation of the assessment upon which Wilson's tax title rested.[16] In this electronic request, the Assessor stated that the reason for the cancellation was that the building was destroyed by a fire and that Esparros was the correct owner of the building.[17] However, Esparros's representative has since testified in his deposition that the improvements purchased by Wilson did not suffer any damage from a fire.[18] Nonetheless, on July 28, 2010, the Louisiana Tax Commission granted the change order request and cancelled the underlying assessment and the resulting tax sale of the metal structure.[19]

### *B. Procedural Background*

On October 1, 2010, Wilson filed this suit against Esparros, the Assessor, and the Louisiana Tax Commission for their alleged violations of his procedural due process rights pursuant to 42 U.S.C. § 1983 as a result of these events.[20] Later, Wilson dismissed the Tax Commission and amended his complaint to name the individual members of the Tax Commission as defendants (the "Tax Commissioners").[21] Wilson alleges that the Tax Commissioners promulgated a policy that permitted the cancellation of tax sales, and in turn the deprivation of property, without providing prior notice to, or an opportunity to be heard by, the individual whose property interest derived from

---

[16] Rec. Doc. 50-8 at p. 6.

[17] *Id.*

[18] Rec. Doc. 50-8 at p. 7. No party has submitted any evidence establishing that the improvements were damaged by the fire.

[19] *Id.*

[20] Rec. Doc. 1.

[21] Rec. Doc. 24.

the tax sale. Wilson alleges that Esparros and the Assessor used this system to deprive Wilson of his rights without providing him with due process of law.

Specifically, Wilson alleges that the Assessor submitted to the Tax Commission a request to cancel the assessment and Wilson's tax sale purchase, knowing that the cancellation would result in the loss of property without first providing Wilson with notice or an opportunity to be heard. Wilson alleges that the Assessor took this action only because an Esparros representative contacted the Assessor and told the Assessor that the property was destroyed by a fire and that Esparros was the true owner of the structure purchased by Wilson at the tax sale. Wilson alleges that the Assessor acted without confirming this information.

Initially, this case was assigned to Judge A.J. McNamara, Section "D" of the Eastern District of Louisiana.[22] On January 25, 2011, the Assessor filed a motion to dismiss for failure to state a claim upon which relief could be granted, wherein the Assessor argued that Wilson's claims against the Assessor should be dismissed because the Assessor is entitled to qualified immunity.[23] On March 11, 2011, Judge McNamara denied the Assessor's motion, finding that Wilson's complaint alleged that the Assessor's actions denied Wilson of the property right acquired in the tax sale without due process; that Wilson's right was clearly established at the time of the Assessor's alleged conduct; and that the Assessor's actions were objectively unreasonable.[24] On June 2, 2011, this case was transferred to Judge Lance M. Africk, Section "I" of this court.[25] On September 29, 2011, the

---

[22] Rec. Doc. 2.

[23] Rec. Doc. 12.

[24] Rec. Doc. 19.

[25] Rec. Doc. 35.

5

Assessor filed a Motion for Summary Judgment.[26] On October 2, 2011, Wilson filed a Motion for Summary Judgment.[27] Thereafter, on October 11, 2011, this case was transferred to this Section, Section "G" of this Court.[28]

On July 11, 2012, this Court issued an Order and Reasons (hereinafter "the Order") wherein it granted the Assessor's motion for summary judgment, denied Wilson's motion for summary judgment, and dismissed with prejudice Wilson's claims against the Assessor.[29] The Court did not reach the question of whether Wilson had a property interest at the time that the tax sale was canceled, because it found that regardless of a determination on that issue, Wilson could not demonstrate that the actions of Defendants *deprived* him of his interest in property.[30] The Court relied on *Jamie Land Co., Inc. v. Touchstone*,[31] from the Louisiana First Circuit Court of Appeal, where upon similar circumstances, that court held that cancellation of a tax sale without notice to the purchaser did not violate due process rights because the purchaser could still pursue a remedy through a quiet title action.[32] Specifically, the Court held that Wilson could not show that the cancellation of the tax sale deprived Wilson of any existing property interest, because after the cancellation the state still allowed for process in the form of a quiet title action.[33] Moreover, the

---

[26] Rec. Doc. 48.

[27] Rec. Doc. 50.

[28] Rec. Doc. 52.

[29] Rec. Doc. 79 at p. 27.

[30] *Id.* at p. 22.

[31] 2006-2057 (La. App. 1 Cir. 6/8/07); 965 So.2d 873

[32] *Id.* at 876.

[33] Rec. Doc. 79 at p. 24.

6

Court found that Wilson had not been deprived of possession of the improvements, because he never had been in possession nor had he followed the proper procedure to obtain possession under Louisiana law.[34] Based on these findings, the Court also declined to address the Assessor's affirmative defense of qualified immunity.[35]

On July 19, 2012, Wilson filed the pending motion to reconsider.[36] The Assessor filed a response to the motion on July 26, 2012.[37] The Tax Commissioners filed a separate response in opposition to the motion on August 6, 2012.[38]

## II. Standard on a Motion for Reconsideration

Although the Fifth Circuit has noted that the Federal Rules "do not recognize a 'motion for reconsideration' *in haec verba*,"[39] it has consistently recognized that such a motion may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b).[40] Rule 59 governs a request to alter or amend a final judgement. Such a motion "calls into question the correctness of a judgment,"[41] and courts have considerable discretion in deciding whether to grant

---

[34] *Id.* at p. 25.

[35] *Id.* at p. 26.

[36] Rec. Doc. 84.

[37] Rec. Doc. 87.

[38] Rec. Doc. 90.

[39] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

[40] *Id*. (Rules 59 and 60); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *3-4 (E.D. La. Apr. 5, 2010) (Vance, C.J.) (Rule 54).

[41] *Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp. (In re Transtexas Gas Corp.)*, 303 F.3d 571, 581 (5th Cir. 2002).

7

such a motion.[42] In exercising this discretion, courts must carefully balance the interests of justice with the need for finality.[43] Courts in the Eastern District of Louisiana have generally considered four factors in deciding motions for reconsideration under Rule 59(e) to review a final judgement:

> (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;
> (2) the movant presents newly discovered or previously unavailable evidence;
> (3) the motion is necessary in order to prevent manifest injustice; or
> (4) the motion is justified by an intervening change in controlling law.[44]

A motion for reconsideration, "'[is] not the proper vehicle for rehashing evidence, legal theories, or arguments. . . .'"[45] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[46] "It is well settled that motions for reconsideration should not be used . . . to re-urge matters that have already been advanced by a party."[47]

Reconsideration, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly"[48] and the motion must "clearly establish" that reconsideration is warranted.[49] When there exists no independent reason for

---

[42] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[43] *Id.* at 355-56.

[44] *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4 (citations omitted).

[45] *Id.* (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

[46] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

[47] *Helena Labs.*, 483 F. Supp. 2d at 539 (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[48] *Templet*, 367 F.3d at 478-79 (citation omitted).

[49] *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.[50]

### III. Parties' Arguments

In support of the pending motion, Wilson contends that he in fact has been deprived of a "real and substantive right originating" by the defendants actions resulting in the cancellation of his tax sale.[51] He further argues that "[u]nder Louisiana law a tax deed is an actual ownership interest in real estate, not an illusory or hypothetical ownership."[52] As such, Wilson avers that the only procedures to destroy that interest under Louisiana law is by redemption or by annulment.[53]

Upon the assumption that Wilson has a protectable property interest, he also argues that "[t]he existence of state remedies to Patrick Wilson, such as the pursuit of a quiet title action, are inconsequential as to the question of jurisdiction under 42 U.S.C. § 1983," and Wilson may pursue his claims upon completion of a wrongful act.[54] Wilson avers that "[t]he federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before a federal one is invoked... the plaintiff knows of no authority that requires an additional demonstration

---

[50] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F.Supp. 2d 471, 481 (M.D. La. 2002). *See also Mata v. Schoch*, 337 BR 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented). *See also FDIC v. Cage*, 810 F.Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

[51] Rec. Doc. 84-1 at p. 3.

[52] *Id.* at p. 4 (citing La. Const. Art. VII, § 25, cl. (A)(1)).

[53] *Id.*

[54] *Id.* at p. 5 (citing *Zinermon v. Burch*, 494 U.S. 113, 124 (1990)).

9

that Mr. Wilson was *prevented* from pursuing a quiet title proceeding or any other remedy which precludes plaintiff's § 1983 claim."[55]

Wilson recognizes that a claim for procedural due process is not actionable under Section 1983 when the deprivation occurs, but only after the State fails to provide due process.[56] Wilson contends that neither the Assessor nor the Tax Commissioners "followed the procedures required by the Louisiana Constitution for terminating the plaintiff's property right."[57] Wilson refutes that La. R.S. 47:2266(A) requires a plaintiff to pursue a quiet title action before a deprivation can be demonstrated, and argues that a close reading of the statute leaves this as a discretionary option for a plaintiff.[58] Wilson also argues that forcing him to pursue a quiet title action would expose counsel to potential ethical violations; to institute a quiet title action, the petitioner must assert that he is the holder of a tax sale title to the property by virtue of a tax sale, but if the title is canceled, such a statement would be false.[59] Likewise, to obtain a writ of possession, Wilson argues that similar representations to the court would be required.

Wilson suggests that federal case law provides guidelines to consider due process claims in administrative law. Wilson avers that this Court must consider "[w]hether the procedures used by the Assessor and the Tax Commission defy procedural due process requirements" by balancing the interests involved against the burden placed on the state.[60] To this end, Wilson maintains that he has

---

[55] *Id.* at pp. 5-6.

[56] *Id.* at p. 7 (citing *Zinermon*, 494 U.S. at 126).

[57] *Id.*

[58] *Id.*

[59] *Id.* at p. 8.

[60] *Id.* at p. 9.

10

been deprived of a very serious substantive right by the procedures utilized and that the online request system for change orders does not subject the requests to "any level of scrutiny."[61]

Wilson next considers if there are "additional or substitute procedural safeguards" to ensure that one's due process rights are not violated. Wilson contends that "[i]f the Assessor and the Tax Commission are going to disregard the Louisiana Constitution and Louisiana positive law, at a minimum some type of process should be employed before terminating a substantive property right.[62] Wilson argues that in this matter, he was not given notice or a hearing, and this allowed the Assessor to "arbitrarily and capriciously" deny Wilson of a substantive property right.[63]

In addition, Wilson contends that La. R.S. 39:351 and 47:1991 allow for processes that are vague, overbroad, and preempted by the United States Constitution. Moreover, Wilson seeks judicial review of the *Jamie Land* decision, relied upon this Court's previous order, claiming that it "applies the law in violation of equal protection."[64] Wilson maintains that the Louisiana Constitution only permits cancellation of a tax sale in two ways: redemption or an annulment proceeding.[65] Therefore, Wilson argues that the aforementioned Revised Statutes are unconstitutional and "spawn[] a third manner to extinguish a tax sale," which is beyond what the Constitution allows.

Regarding La. R.S. 47:1991(A), Wilson contends that the law allows for four different scenaros under which the Tax Commission may cancel a tax sale: (1) when there is a clerical error; (2) an erroneous assessment; (3) a dual assessment; or (4) when the property is tax exempt under

---

[61] *Id.*

[62] *Id.* at pp. 9-10.

[63] *Id.* at p. 10.

[64] *Id.* at p. 11.

[65] *Id.*

11

the Louisiana Constitution. Wilson takes issue with the statute's lack of a definition for "erroneous assessment" and that upon affidavit evidence, the Tax Commission can order the recorder of mortgages to cancel a tax sale, whether or not the property has been adjudicated to a third party.[66]

Concerning La. R.S. 39:351, Wilson criticizes the law for not requiring affidavits made under oath or verification by the assessor before cancelling a recorded tax sale. Wilson emphasizes that this law has never been formally subject to judicial review, and where the law was previously applied in *Jamie Land*, it was applied in a manner that violated the constitution.[67] In addition, Wilson states that:

> According to Louisiana Revised Statute 47:2183, the sheriff records tax deeds in the office of conveyance records of the parish where the property is located. However, Louisiana Revised Statutes 47:1991 and 39:351 only allow the Tax Commission authority to compel the "recorder of mortgages" to cancel a tax sale upon determination of an erroneous assessment. This is problematic because the tax Commission is actually exercising authority over the clerk of court and not the recorder of mortgages, which is clearly outside the language of the statute.[68]

Wilson also asserts that 47:1991 is ambiguous as to who must make statements under oath, and 39:351 does not outline the proper procedure for determinations to be made, rendering both statutes "open to the possibility of abuse."[69] Wilson distinguishes several Louisiana state court decisions applying these statutes, claiming that in those instances the law was applied "without discriminatory impact."[70]

---

[66] *Id.* at p. 12.

[67] *Id.* at p. 13.

[68] *Id.* at pp. 13-14 (internal citations omitted).

[69] *Id.* at p. 14.

[70] *See id.* at pp.14-16.

Turning to the *Jamie Land* decision, Wilson argues that he brought his claim here pursuant to Section 1983 because "Louisiana Courts do not enforce the Fourteenth Amendment to protect property interests of tax buyers. In short, the [*Jamie Land*] court applies the law in violation of equal protection and only accords due process protections to property owners, not tax buyers."[71] Wilson reasons that the *Jamie Land* court relied heavily on *Mennonite Board of Missions v. Adams*,[72] "which sets out the broad principle that before a property interest can be terminated notice and an opportunity to be heard must be given."[73] Wilson argues that the *Jamie Land* court incorrectly decided that a quiet title action is the proper venue to exercise constitutional claims. Wilson asks the Court to adopt Judge Pettigrew's dissent in *Jamie Land*, wherein he argues that La. R.S. 39:351 and 47:1991 are limited by the Louisiana Constitution, which only allows for the cancellation of a tax sale based on redemption or an annulment proceeding, and that the lack of notice presents due process concerns.[74]

In the alternative, Wilson claims that a quiet title action "is not a viable remedy" here.[75] He argues that a suit to quiet title is between a plaintiff and former owners, and therefore he would not be able to seek relief against the Assessor or the Tax Commissioners for their alleged violations of his due process rights.[76] He also argues that pursuing a Writ of Possession would similarly be inadequate because "[a] Writ of Possession is a right accorded to a tax buyer for the sole purpose

---

[71] *Id.* at p. 16.

[72] 462 U.S. 791 (1983).

[73] Rec. Doc, 84-1 at p. 16.

[74] *Id.* at p. 17.

[75] *Id.* at p. 18.

[76] *id.* At p. 19.

13

of remediating property, subject to a tax sale, that has been adjudicated to have fallen bellow property standards. Since Mr. Wilson was never ordered by any authority to bring the property into compliance, a writ of possession was never a viable pursuit."[77] Finally, Wilson maintains that he is not asserting that he is victim of an improper "taking," since "no property was taken for public use," and therefore, there is no requirement for Wilson to exhaust state remedies first.[78]

In opposition, the Assessor argues that the pending motion should be denied because the Court has committed no manifest error of law.[79] The Assessor contends that the pending motion fails to confront that "prior to the change order plaintiff lost the property by adjudication to the parish for non-payment of 2007 taxes."[80] As Wilson's claim for procedural due process arises out of events after the adjudication, the Assessor avers that he does not have a protectable property right to support a claim for violations of procedural due process.

The Tax Commissioners filed a separate opposition to the pending motion, making a nearly identical argument to that of the Assessor that Wilson lost any property right after the adjudication.[81] Moreover, the Tax Commissioners argue that "[u]nder the principle of comity, federal courts are reluctant to interfere in the taxation processes of the various states."[82] In further support, the Tax Commission cites a recently affirmed decision from this Court of which it was a defendant, holding that "Plaintiffs' Sec. 1983 due process claims... surely are barred under the Tax Injunction Act, the

---

[77] *Id.*

[78] *Id.* at pp. 19-20.

[79] Rec. Doc. 87.

[80] *Id.* at p. 1.

[81] Rec. Doc. 90.

[82] *Id.* at p. 2 (citing *Fair Assessment in Real Estate Assoc., Inc. v. McNary*, 454 U.S. 100 (1981)).

14

Anti-Injunction, and by principles of comity... And the Court can envision no greater violation of the principle of comity than if the court were to usurp control over state tax litigation."[83]

## IV. Law and Analysis

Wilson's various constitutional challenges and requests for relief presume he has a protectable property interest to support a claim for violations of procedural due process.[84] In opposition to the pending motion, the Tax Commissioners and Assessor largely avoid the constitutional issues raised by Wilson, arguing instead that he lost any property interest when he failed to pay taxes and the property was adjudicated to the Parish.[85] In the Order, this Court declined to address whether Wilson had a protectable property interest in the disputed property.[86] However, as this finding would be a necessary precursor to all of Wilson's arguments made throughout this suit, it is appropriate for this Court to resolve this issue and determine if a real case or controversy exists before analyzing Wilson's claims that state laws violate the Louisiana and United States Constitutions.

Wilson does not dispute that the property at issue was adjudicated to the Parish in 2007 for unpaid taxes for the 2006 fiscal year, and makes no claim that he redeemed the property at any time to regain ownership.[87] Instead, he argues that under La. R.S. 47:2197, property adjudicated to the

---

[83] *Id.* (citing *ANR Pipeline Co. v. La. Tax Comm'n*, No. 10-2622, 2011 WL 163547 (E.D. La. Jan. 19, 2011) (Zainey, J.), *aff'd* 646 F.3d 940 (5th Cir. 2011).

[84] Wilson also "call[s] upon this Court for judicial review of the First Circuit's unconstitutional (mis)application of state law in *Jamie Land v. Touchstone*." *Id.* at p. 11. While the specific facts of the *Jamie Land* are not before this Court, it should also be recognized that a federal district court is without subject matter jurisdiction to sit in direct review of a final order of a state court. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-85 (1983).

[85] Rec. Doc. 90 at p. 1.

[86] Rec. Doc. 79 at 22.

[87] Rec. Doc. 55 at p. 7.

state "does not change the assessed owner."[88] However, this is not what the statute says nor what Louisiana jurisprudence holds. Louisiana Revised Statute 47:2197:

> Adjudicated property shall remain assessed in the name of the tax debtor, and if transferred, the new or current owner. The political subdivision shall have no liability with respect to the property resulting solely from the adjudication. No encumbrance against a political subdivision shall affect adjudicated property.

"Assessed" is not synonymous with ownership, and this statute does not imply the tax debtor retains ownership. Such an interpretation would make adjudication meaningless and furthermore is contrary to Louisiana law and jurisprudence. Louisiana Revised Statute 47:2122 defines "adjudicated property" as "property of which tax sale title is acquired by a political subdivision ." Further "tax sale title" is defined as "the set of rights acquired by a tax sale purchaser or, in the case of adjudicated property, on the applicable political subdivision."[89] Therefore, while Wilson had title when he purchased the property at a tax sale, he lost that tax title when the property was adjudicated to the Parish for his failure to pay taxes. These definitions foreclose Wilson's argument that the adjudication did not extinguish his title in the property, and the case law undeniably reinforces the defendants' contention that Wilson lacks any property interest in the formerly adjudicated property. As such, when Wilson's tax sale was canceled in 2010, he no longer had any interest in the property.

In *Heirs of E.M. Boagini v. Thorton*,[90] the Louisiana Court of Appeal for the Third Circuit made clear that property adjudicated to the State is vested therein. In *Boagini*, a parcel of land was adjudicated to the State for unpaid taxes in 1905. Regardless, John Harmanson conveyed a one-half interest in the tract of land to John Thorton. "In spite of the fact that the land was adjudicated to the

---

[88] *Id.*

[89] La. R.S. 47:2122(22).

[90] 132 So.2d 494 (La. App. 3 Cir. 1961).

16

State for unpaid taxes... the property for some unexplained reason was assessed to John H. Harmanson."[91] Harmanson failed to pay taxes, and the property was adjudicated to the State for a second time. Mr. Boagni then bought the property at a tax sale in 1912 based on the second adjudication.[92] Boagni paid all state and parish taxes after his purported purchase. In 1945 an agent for the defendants redeemed the property from the State based upon the 1905 adjudication.[93]

The heirs of Boagni claimed valid title based on the 1912 tax deed. The court rejected plaintiffs claims and found that they had no cause of action, and held that since "title to the property which is here in dispute became vested to the State by virtue of the 1905 tax adjudication, then the 1912 tax sale to Boagni was an absolute nullity."[94] The court further reasoned:

> In our opinion the jurisprudence of this State is established to the effect that ***public property*** is exempt from taxation, and that the unauthorized acts of assessors and tax collectors in assessing and collecting taxes ***on property which has previously been adjudicated to the State for unpaid taxes*** cannot bind the State and do not constitute a waiver of ***title*** by the State.[95]

This case makes clear that contrary to Wilson's contentions, after the property was adjudicated to the Parish for Wilson's non-payment of taxes, the property and title were vested in the Parish, not him. Louisiana jurisprudence consistently holds that when land is adjudicated to the

---

[91] *Id.* at 496.

[92] *Id.*

[93] *Id.*

[94] *Id.* at 498.

[95] *Id.* at 498 (emphasis added).

17

State or a political subdivision, title to that land is vested in that public entity.[96] Like the defendants in *Boagni*, Wilson could have redeemed the property and obtained the title from the Parish, but as of yet has failed to do so. As Wilson did not have a protectable property interest in the property at issue when the tax sale was canceled, the Court declines to reconsider its prior Order dismissing Wilson's claims or consider Wilson's other constitutional arguments.

## V. Conclusion

Louisiana law establishes that once property is adjudicated to the State or another political subdivision, title is vested in that public entity. Wilson does not dispute that the property at issue has been previously adjudicated from him to the Parish, and he has not redeemed the property. Therefore, Wilson lacks a property interest in the disputed improvements and may not pursue a Section 1983 claim for a violation of his right to procedural due process. As such, this Court finds that the Order dismissing Wilson's claims was not in error. Accordingly,

**IT IS HEREBY ORDERED** that Wilson's Motion for Reconsideration[97] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 14th day of December, 2012.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[96] *See Estate of Helis v. Hoth*, 150 So.2d 106 (La. App. 4 Cir. 1963) (holding that from date of adjudication until land has redeemed, title to land was vested to the State); *see also Johnston v. Nanney*, 147 So.2d 268, 273 (La. App. 3 Cir. 1962) ("adjudication to the State, which adjudication we think was valid and had the effect of vesting legal title to the property in the State").

[97] Rec. Doc. 84.